**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Paul Randall Gay, Respondent,

v.

Regina Suzanne Gay, Appellant.

Appellate Case No. 2025-000258

———————

Appeal From Greenville County
Rochelle Y. Conits, Family Court Judge

———————

Unpublished Opinion No. 2026-UP-167
Heard March 10, 2026 – Filed March 31, 2026

———————

**AFFIRMED**

———————

Richard H. Rhodes and William Hardwick Rhodes, both
of Burts Turner & Rhodes, of Spartanburg, for Appellant.

Gwendolynn Wamble Barrett, of Barrett Mackenzie,
LLC, of Greenville, for Respondent.

Megan Goodwin Burke, of Greenville, for the
Guardian ad Litem.

———————

**PER CURIAM:** In this family court action, Regina Gay (Mother) appeals the family court's order awarding the parents joint custody of their minor children, asserting the court failed to properly apply the seventeen factors set out in South Carolina Code section 63-15-240 (Supp. 2025) and failed to identify specific exceptional circumstances to justify joint custody. We affirm.

## I.  BACKGROUND

Paul Gay (Father) and Mother were married on August 9, 2010.  The parties share two children from the marriage: their son, V.R.G., born in 2012, and their daughter, A.L.G., born in 2014.  The parties separated on October 25, 2022.  Father initiated divorce proceedings on the grounds of adultery and requested sole custody of their minor children.  Mother filed an answer and counterclaim seeking sole custody and a divorce on the same grounds.

The court issued two temporary orders during the pendency of the litigation.  On February 7, 2023, the court issued a temporary order awarding the parties joint custody with Father having primary placement.  Mother was awarded placement of the children every other weekend from Friday after school until Monday morning.  During the weeks she did not have weekend placement, she would have overnight visits on Thursdays after school.

The court revised its temporary custody arrangement on August 9, 2023, pursuant to the guardian ad litem's (GAL) motion for temporary relief.  The GAL expressed concerns related to Father surreptitiously bringing his girlfriend into the marital home while the children were sleeping and leaving the children unattended in the evenings while he went out to drink with friends.  Under the revised arrangement, Mother had primary placement and Father had the same visitation scheme previously awarded to Mother.

At the final merits hearing on April 22–25, 2024, and August 19–20, 2024, the family court heard testimony from the parties, their witnesses, the parties' communication therapist, and the GAL.  Father requested an alternating week-to-week joint custody arrangement and Mother requested primary custody.  Mother raised concerns to the court regarding Father's drinking habits.  She also contended that he continued to expose the children to paramours and failed to adequately supervise the children.  Father raised concerns with Mother's failure to involve him in major decisions regarding the children, and Mother's delegation of her parental duties to her parents and other parties.  Father also raised concerns about the potential for alienation due to conduct by Mother and her parents.  After carefully considering the evidence presented, the family court found it was in the children's best interest to grant the parties week-to-week joint custody.

Both parties filed timely motions seeking to alter or amend the final order. By order dated January 21, 2025, the family court denied the parties' motions on issues regarding child custody, visitation, and support.[1] This appeal followed.

## II. STANDARD OF REVIEW

"On appeal from the family court, the appellate court reviews factual and legal issues de novo." *Klein v. Barrett*, 427 S.C. 74, 79, 828 S.E.2d 773, 776 (Ct. App. 2019); *see also Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) ("[T]he proper standard of review in family court matters is de novo, rather than an abuse of discretion."). "[De novo] review permits appellate court fact-finding, notwithstanding the presence of evidence supporting the trial court's findings." *Lewis v. Lewis*, 392 S.C. 381, 390, 709 S.E.2d 650, 654–55 (2011). However, we are mindful that because family courts are in a better position to evaluate evidence, we should defer to their custody decisions. *Shirley v. Shirley*, 342 S.C. 324, 329, 536 S.E.2d 427, 429–30 (Ct. App. 2000). "[A]ppellate court[s] should be reluctant to substitute [their] own evaluation of the evidence on child custody for that of the [family] court." *Id.* at 331, 536 S.E.2d at 430. "Therefore, the appellant bears the burden of convincing the appellate court that the family court committed error or that the preponderance of the evidence is against the family court's findings." *Klein*, 427 S.C. at 80, 828 S.E.2d at 776.

## III. LAW/ANALYSIS

### A. Statutory Custody Factors

Mother argues that, although the family court referenced the seventeen statutory factors, the court failed to apply the factors to the facts of the case.[2] We disagree.

---

[1] On reconsideration, the family court judge modified her order to include that the parties must use in-network medical providers for the children. The court also modified the parties' visitation schedule based on the agreement of the parties.

[2] Mother also raised an argument in her statement of issues that she disagreed with the court's decision to award Father with final decision-making authority; however, the brief fails to address the argument. We therefore find this issue has been abandoned. *See Fields v. Melrose Ltd. P'ship*, 312 S.C. 102, 106, 439 S.E.2d 283, 285 (Ct. App. 1993) ("An issue raised on appeal but not argued in the brief is deemed abandoned and will not be considered by the appellate court.").

The family court may award parties joint custody of their children. S.C. Code Ann. § 63-15-240 (Supp. 2025). When determining custody decisions, "the best interest of the child is the paramount consideration." *Gandy v. Gandy*, 297 S.C. 411, 414, 377 S.E.2d 312, 313 (1989); S.C. Code Ann. § 63-15-230(A) (Supp. 2025). "Custody is based on a determination of the character, fitness, attitude[,] and inclinations on the part of each parent." *Gandy*, 297 S.C. at 414, 377 S.E.2d at 313–14. Section 63-15-240 of the South Carolina Code (Supp. 2025) provides the family court with guidance on what factors it may use to determine custody:

(B) In issuing or modifying a custody order, the court must consider the best interest of the child, which may include, but is not limited to:

(1) the temperament and developmental needs of the child;

(2) the capacity and the disposition of the parents to understand and meet the needs of the child;

(3) the preferences of each child;

(4) the wishes of the parents as to custody;

(5) the past and current interaction and relationship of the child with each parent, the child's siblings, and any other person, including a grandparent, who may significantly affect the best interest of the child;

(6) the actions of each parent to encourage the continuing parent-child relationship between the child and the other parent, as is appropriate, including compliance with court orders;

(7) the manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute;

(8) any effort by one parent to disparage the other parent in front of the child;

(9) the ability of each parent to be actively involved in the life of the child;

(10) the child's adjustment to his or her home, school, and community environments;

(11) the stability of the child's existing and proposed residences;

(12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, must not be determinative of custody unless the proposed custodial arrangement is not in the best interest of the child;

(13) the child's cultural and spiritual background;

(14) whether the child or a sibling of the child has been abused or neglected;

(15) whether one parent has perpetrated domestic violence or child abuse or the effect on the child of the actions of an abuser if any domestic violence has occurred between the parents or between a parent and another individual or between the parent and the child;

(16) whether one parent has relocated more than one hundred miles from the child's primary residence in the past year, unless the parent relocated for safety reasons; and

(17) other factors as the court considers necessary.

We find the family court fully considered the relevant statutory factors and weighed the credibility of each party's testimony to find sufficient justification to award joint custody. *See Rice v. Rice*, 335 S.C. 449, 458, 517 S.E.2d 220, 225 (Ct. App. 1999) (finding the "determination of the best interest[s] of the children is an inherently case-specific and fact-specific inquiry"). The court sufficiently considered the children's best interests, finding they both seemed to be happy, loving, and active children who both had great affection for their parents. Both

children were involved in various extracurricular activities, were in therapy, and were performing well in school. We believe that the court considered each of the parent's strengths and weaknesses—both admonishing Father for bringing his children around his girlfriends and for his behavior towards the couple's counselor and GAL, and Mother for moving the children to new schools without consulting Father and isolating the children from Father. The family court also found that both parents exhibited several positive parenting qualities. We agree with the family court that both parents are devoted to the minor children, have adequate accommodations, transportation, and ability to care for the children both physically and financially. After reviewing the record before the family court, we find that the family court sufficiently considered the statutory factors when weighing its decision to grant joint custody.

## B. Exceptional Circumstances

Second, Mother argues the trial court failed to identify specific exceptional circumstances to justify awarding joint custody. We disagree.

Section 63-15-210(1) of the South Carolina Code (Supp. 2025) defines joint custody as:

> [B]oth parents have equal rights and responsibilities for major decisions concerning the child, including the child's education, medical and dental care, extracurricular activities, and religious training; however, a judge may designate one parent to have sole authority to make specific, identified decisions while both parents retain equal rights and responsibilities for all other decisions.

"Although the legislature gives family court judges the authority 'to order joint or divided custody [when] the court finds it is in the best interests of the child,' . . . joint or divided custody should only be awarded [when] there are exceptional circumstances." *Patel v. Patel*, 359 S.C. 515, 528, 599 S.E.2d 114, 121 (2004) (quoting S.C. Code Ann. § 20-7-420(42) (Supp. 2003)). "[G]enerally, joint custody is disfavored" and will be awarded only when exceptional circumstances dictate that such an arrangement is in a child's best interests. *Scott v. Scott*, 354 S.C. 118, 125, 579 S.E.2d 620, 624 (2003); *see also Lewis v. Lewis*, 400 S.C. 354, 365, 734 S.E.2d 322, 327 (Ct. App. 2012) (noting South Carolina courts have determined joint custody "is usually considered harmful to and not conducive to the best interest and welfare of a child"); *but see* S.C. Code Ann. § 63-15-230(C) (Supp. 2025) ("If custody is contested or if either parent seeks an

award of joint custody, the court *shall consider all custody options, including, but not limited to, joint custody*, and, in its final order, the court shall state its determination as to custody and shall state its reasoning for that decision." (emphasis added)).

We find the court sufficiently stated specific circumstances to justify awarding joint legal custody. The court found the following exceptional circumstances:

> Both parents are heavily involved with and love their minor children. Although the parents have much animosity between them it would be detrimental to the minor children for either parent to be relegated to an every other weekend parent. In making this decision, the [c]ourt has carefully considered the parties' inability to effectively communicate and work together for the benefit of the minor children. While the parties' ability to coparent has been difficult during the pendency of this action, the [c]ourt has had the benefit of seeing how each parent treated the other when that parent had primary custody, and how being in the primary custody of each parent negatively affected the welfare of the minor children, as the children missed the other parent and wanted to spend more time with the other parent, both of whom have numerous positive attributes that will benefit their minor children. The [c]ourt in implementing a shared parenting arrangement is allowing the minor children to maximize their time with both parents while trying to keep them out of the middle of the parents' animosity.

Based on the circumstances in this case, we find the court did not err in finding joint custody was warranted. We find the court had the special ability to view each of the parent's performance in a primary custody role, as each parent had the opportunity to serve as primary custodian during litigation. The court found that neither parent acted admirably toward the other parent while serving as the primary custodian. The court also found that both parents are clearly devoted to their children and deserve more than a standard every-other-weekend visit. We agree with the court's concerns that each parent may alienate the other if granted sole custody, and we trust the court's judgment that joint custody would significantly alleviate this issue. *See Scott*, 354 S.C. at 126, 579 S.E.2d at 624 (finding exceptional circumstances existed to grant joint custody where there was a

potential "for the custodial parent to effectively alienate [the child] from the non-custodial parent" in a sole custody arrangement with the parents).

## IV.  CONCLUSION

Based on the foregoing, the family court's order is

**AFFIRMED.**

**GEATHERS, HEWITT, and CURTIS, JJ. concur.**