510 S.E.2d 726

**Jenny BAKER and Jerry Baker, Appellants,**

**v.**

**Scott G. WOLFE, Barbara Miller and Charles Miller, Respondents.**

**No. 2919.**

Court of Appeals of South Carolina.

Heard Nov. 5, 1998.

Decided Dec. 21, 1998.

Robert T. Williams, Sr., of Williams, Hendrix, Steigner & Brink, of Lexington, for appellants.

Donald D. Aaron, of Aaron & Aaron, of Columbia, for respondents.

Guardian ad Litem: Warren A. Kohn, of Columbia.

HOWELL, Chief Judge:

In this child custody dispute, Jenny and Jerry Baker (the Bakers, or the Mother and the Stepfather) appeal from an order of the family court awarding custody of the Mother's two minor children to their paternal grandparents, Barbara and Charles Miller (the Grandparents). We affirm.

## I.

The Mother married Scott Wolfe (the Father) in 1989; they divorced in 1991. In the 1991 divorce decree, the family court granted custody of the parties' two minor children to the Mother. In May 1993, the children began living with the Father, who was living with the Grandparents. According to

the Father, the children came to live with him because the Mother "dropped them off at the house one weekend and they just started living with me from then on. She didn't come back for them."

In June 1994, the Father brought an action against the Mother seeking joint custody of the children. The Mother answered and joined in the Father's request. By order dated August 10, 1994, the family court awarded the Father joint custody, and gave primary physical custody of the children to the Father "so long as [the Father] resides with his mother, Barbara Miller."

In November 1995, the Mother commenced this action, seeking to have the Father held in contempt for failing to comply with the court-ordered visitation schedule and also seeking sole custody of the children. The Father counter-claimed for sole custody of the children. At the time this action was commenced, the children were still living with the Father in the Grandparents' home.

The Grandparents and the Stepfather were made parties to the action. The order adding the Grandparents to the action provided that "any and all pleadings previously filed for relief or filed subsequently hereto ... by the [Father], shall be treated as if it were a joint request by the [Father] and [the Grandparents]."

While all parties were present on the first day of the hearing, the Mother and Stepfather were not present on the second day. Their attorney informed the court that an emergency prevented his clients from attending, but that he was authorized to proceed in their absence.

By order dated March 12, 1997, the family court determined that both the Mother and Father were unfit.[1] The court determined that Barbara Miller (the Grandmother) "has provided by far more of the parenting functions on a regular basis to the children than either [the Mother] or [the Father]." The court, therefore, awarded the Grandmother sole custody of the children and established a visitation schedule for the Mother.

---

1. The Father has not appealed the family court's determination that he is unfit.

On March 19, 1997, the Grandmother filed a motion pursuant to Rule 59(e), SCRCP, seeking to change the visitation awarded to the Mother. In the motion, the Grandmother informed the court that the Mother and Stepfather had been arrested for trafficking in cocaine between the first and second day of the custody hearing. The Grandmother alleged the Mother had threatened to take the children out of state and had attempted to remove them from their school. At the hearing on the Grandmother's motion, the Grandmother submitted affidavits and documentation from the Richland County Sheriff's Department indicating the Mother and Stepfather had been under police surveillance for more than two months and that they sold more than 28 grams of cocaine to an undercover police agent.

By order dated April 4, 1997, the family court amended its custody decree to restrict the Mother's visitation with the children to two hours per week at a restaurant under the supervision of the Grandmother or her designee.

## II.

On appeal, the Bakers first argue that the family court erred in awarding custody of the children to the Grandmother. The Bakers contend the evidence does not support the family court's determination that the Mother is unfit, and that the family court failed to consider all of the factors applicable to custody disputes between natural parents and third parties. We find no error.

The welfare and best interests of the child are paramount in all custody disputes. However, the law recognizes a rebuttable presumption that it is in the best interest of any child to be in the custody of its biological parent. *Moore v. Moore*, 300 S.C. 75, 386 S.E.2d 456 (1989); *Kay v. Rowland*, 285 S.C. 516, 331 S.E.2d 781 (1985).

In *Moore*, our Supreme Court set forth the following factors to be considered in cases where a natural parent seeks to reclaim custody from a third party: (1) the parent's fitness and ability to properly care for and provide a good home for the child; (2) the amount of contact, in the form of visitation, financial support, or both, the parent had with the child while the child was in the care of a third party; (3) the circum-

stances under which temporary relinquishment occurred; and (4) the degree of attachment between the child and the third party. *Id.* at 79, 80, 386 S.E.2d at 458. The Bakers contend the family court erred by failing to analyze the custody question in light of the factors set forth in *Moore.* We disagree.

■ This case began as a custody dispute between parents who had joint custody of the children. There was no court order or agreement between the parents relinquishing custody to the Grandmother. Although the Mother voluntarily relinquished physical custody of the children in 1993, she relinquished custody to the Father, not a third party. Given that the Father resided with the Grandparents, the Mother may well have assumed that the Grandmother would be the primary caretaker of the children. Nonetheless, her relinquishment of the children to the Father does not seem to be the same type of relinquishment contemplated in *Moore.* Accordingly, given the unique factual circumstances of this case, we conclude that *Moore* is not controlling, although its factors may provide some guidance. Instead, we believe this case is controlled by a determination of the Mother's fitness as a parent and a consideration of the best interests of the children.

■ We agree with the family court that the Mother is unfit to parent the children. First and foremost, there is evidence in the record that the Mother and Stepfather are drug users and dealers,[2] which clearly supports the family court's determination that the Mother is unfit. In addition, there is evidence that both the Mother and the children have suffered physical abuse at the hands of the Stepfather. That the Mother has allowed her children to be physically abused by the Stepfather indicates that the Mother is either unable to or uninterested in properly protecting the children, and again supports the conclusion that the Mother is not fit to parent her children.

■ The Bakers contend, however, that the evidence establishing the drug use and domestic violence came from the

2. In reaching this conclusion, we have not considered the arrest of the Mother and Stepfather that occurred during the custody hearing.

Father and his witnesses and, therefore, should not be believed. In this family court action, we of course have jurisdiction to make findings of fact based upon our own view of the preponderance of the evidence. *See, e.g., Epperly v. Epperly,* 312 S.C. 411, 440 S.E.2d 884 (1994). Nonetheless, given the divergent testimony in this case, we believe it wise to defer to the factual findings of the family court judge, who saw and heard the witnesses and was in the best position to judge their credibility. *See Dorchester County Dep't of Soc. Servs. v. Miller,* 324 S.C. 445, 452, 477 S.E.2d 476, 477 (Ct.App.1996) ("Because the appellate court lacks the opportunity for direct observation of the witnesses, it should accord great deference to trial court findings where matters of credibility are involved. This is especially true in cases involving the welfare and best interests of children.") (citations omitted); *Morehouse v. Morehouse,* 317 S.C. 222, 225–26, 452 S.E.2d 632, 634 (Ct.App.1994) ("In reviewing the family court's factual determinations, we may take our own view of the preponderance of the evidence. We need not, however, disregard the findings of the trial court. Particularly where evidence is disputed, we may adhere to the findings of the trial judge, who saw and heard the witnesses and was in a superior position to judge their credibility. We should be reluctant to substitute our own evaluation of the evidence on child custody for that of the trial court.") (citations omitted).

The family court concluded that the Bakers are users and dealers of drugs and that the Stepfather had physically abused the Mother and the children, and, as noted above, there is evidence supporting those conclusions. We decline to set aside these critical factual findings. The evidence of drug use and domestic violence, particularly when considered with the evidence establishing the Mother's sporadic interest and participation in the children's lives and her failure to properly care for the children while they were in her custody, is more than sufficient to support the family court's conclusion that the Mother is not fit to parent her children.

■ Because we have concluded that the Mother is not fit to be a parent, our inquiry is effectively over. While there is a presumption in favor of awarding custody to a natural parent over a third party, that presumption applies only if the parent is found to be fit. *See Hopkins v. South Carolina Dep't of*

*Soc. Servs.,* 313 S.C. 322, 327, 437 S.E.2d 542, 544 (1993) ("In *Moore v. Moore,* 300 S.C. 75, 386 S.E.2d 456 (1989) we held there is a rebuttable presumption that *a fit natural parent* should have custody as against a third party.") (emphasis added); *cf. McDowell v. Richardson,* 279 S.C. 268, 305 S.E.2d 577 (1983) (error to award custody to a grandparent absent a finding that the natural parent was unfit). Thus, there is no reason to engage in an extensive discussion of the other *Moore* factors.[3] Because the Mother is unfit, we affirm the family court's award of custody to the Grandmother. The best interests of the children will clearly be served by the award of custody to the Grandmother.[4]

## III.

In its order granting custody to the Grandmother, the family court noted that the absence of the Mother and Stepfather on the second day of the hearing caused the court to "question the commitment of [the Mother and Stepfather] in their efforts to acquire custody of the children and most certainly support[s] a perception, when viewed in light of all the evidence, that [the Mother] does not behave responsibly." On appeal, the Bakers contend that the court erred by holding their absence from the hearing against them, given that there was no evidence at the time of the hearing that could give rise to an inference that their absence indicated a lack of desire to gain custody.

As we read the family court's order, the court did not place undue emphasis on the Bakers' absence from trial when making its custody determination. Moreover, even assuming the court somehow erred in considering the Bakers' absence,

---

3. Nonetheless, to the extent the other factors in *Moore* are applicable in this case, they also support the award of custody to the Grandmother. As the family court noted, the Mother turned her children over to the Father and the Grandmother in 1993 and thereafter contributed little financial support and expressed little interest for the children until after this action was commenced. Moreover, the record rather persuasively establishes that the Grandmother has been the primary caretaker of the children for most of their lives.

4. We note that the guardian ad litem also concluded that both the Mother and the Father were unfit and recommended that custody of the children be granted to the Grandmother.

the determination that the Mother is unfit is supported by evidence separate from any "perception" gleaned from her absence on the second day of the hearing. Accordingly, the Bakers were not prejudiced by any error on the part of the family court. *See, e.g., Cartee v. Cartee,* 295 S.C. 103, 106, 366 S.E.2d 269, 270 (Ct.App.1988) (The appellant bears the burden of showing not only error, but also prejudice.).

## IV.

■ The Bakers also argue that the family court erred in considering the Grandmother's motion to amend the judgment when the motion was not served with supporting affidavits, which they contend is required by Rule 59(e), SCRCP. We find no error.

Contrary to the Bakers' argument, Rule 59(e) does not require that supporting affidavits be served with the motion. That requirement is found only in Rule 59(c), which governs motions for new trials. *Compare* Rule 59(c), SCRCP *with* Rule 59(e), SCRCP. Moreover, as noted by the family court, the body of the Grandmother's motion stated in sufficient detail that the motion was based on the Bakers' drug arrest and on their threats to take the children out of state, thus giving the Bakers more than adequate notice of the issues. Finally, given that the Bakers also presented an affidavit to the family court at the hearing, it appears that they had sufficient opportunity to prepare their response. Accordingly, because there is no evidence that the Bakers were prejudiced by the manner in which the motion to reconsider was handled, we find no reversible error.[5]

## V.

The family court ordered the Bakers, the Father, and the Grandparents each to pay one-third of the fees of the second guardian ad litem, who was appointed after the first guardian was removed for medical reasons. The court also ordered the Bakers to pay their portion of the fees owed to the first

---

5. We note that the Bakers challenge only the procedural aspect of the Grandmother's Rule 59(e) motion—they do not argue that the family court abused its discretion by changing the visitation awarded to the Mother.

guardian, as first required by the temporary order that appointed the guardian. The Bakers contend the court erred in requiring them to pay a portion of the fees because the family court's order does not adequately set forth the basis for its assessment of the fees. We disagree.

In a private custody dispute, a guardian ad litem "functions as a representative of the court appointed to assist it in protecting the best interests of the ward. The guardian accomplishes this responsibility by ascertaining the best interests of the ward and advocating to the court the ward's best interest." *Fleming v. Asbill,* 326 S.C. 49, 55, 483 S.E.2d 751, 754 (1997) (citations omitted). Given the guardian's function, we reject the Bakers' argument that guardian's fees should not be assessed against the prevailing party.[6] Because the guardian is appointed to protect the best interests of the children involved in the action, we believe it is quite proper to require all parties to the action to be responsible for a portion of the guardian's fees. Accordingly, we cannot conclude that the family court abused its discretion by requiring the Bakers to pay a portion of the guardians' fees. *See Nash v. Byrd,* 298 S.C. 530, 537, 381 S.E.2d 913, 917 (Ct.App.1989) ("An award of guardian ad litem fees lies within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of discretion.").

As to the Bakers' argument that the order fails to set forth the factual basis for the award and does not state that the guardians' services were necessary or that the fees were reasonable, we first note that nothing in the record before us indicates that the Bakers objected to the reasonableness of the hours or fees of either guardian, either at the hearing or by way of a motion to reconsider. *See, e.g., Smith v. Smith,* 275 S.C. 494, 496, 272 S.E.2d 797, 798 (1980) ("An issue may not be raised for the first time on appeal."). Moreover, our review of the record reveals sufficient evidence to support the award of guardians' fees. *Cf. Townsend v. Townsend,* 323 S.C. 309, 318, 474 S.E.2d 424, 430 (1996) (where order awarding attorney's fees does not contain specific findings of fact, "reversal is not warranted as long as each factor is supported by evidence

---

6. The Bakers contend that they "should have been the prevailing party."

in the Record."). We therefore find no error in the family court's assessment of fees against the Bakers.[7]

Accordingly, for the foregoing reasons, the decision of the family court is hereby

**AFFIRMED.**

ANDERSON and STILWELL, JJ., concur.

---

7. The guardian ad litem has filed a respondent's brief in this appeal in which the guardian requests additional fees for costs and time spent on the appeal. This request should be made by way of a motion pursuant to Rule 222, SCACR.